UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT TREADWELL,

          Plaintiff,           Case No. 1:10-cv-560

v.                                         Honorable Paul L. Maloney

RON ALMY et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's due process and Eighth Amendment claims for failure to state a claim. The Court will serve Plaintiff's retaliation claim against all Defendants.

**Discussion**

I.      Factual allegations

Plaintiff Robert Treadwell presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility, though the actions he complains of occurred while he was housed at the Muskegon Correctional Facility (MCF). Plaintiff sues the following MCF employees: Assistant Food Service Director Ron Almy; Deputy Warden Michael Singleton; Food Service Supervisor Chad Hardy; and Food Service Director Tony Henry.

Plaintiff was the "OD Cook" at MCF on January 8, 2009, when he noticed that the chicken patties that were being cooked for the general population and staff evening meals were being taken from a box that did not have a manufacturer's expiration date, as required by MICH. DEP'T OF CORR., Policy Directive 04.07.102, ¶ C. Plaintiff also noted that the patties being taken from the box were being sorted, with certain pieces being thrown in the trash containers and other pieces being placed into the fryers. Three weeks earlier, a similar incident had occurred, and Warden Harry had intervened to prevent food service staff from using the chicken patties. Plaintiff was concerned about the chicken, and he took his concerns to Supervisor Noble. Noble told Plaintiff that there was nothing wrong with the chicken patties. Shortly thereafter, Plaintiff heard Defendant Hardy tell Corrections Officer Thompson not to eat the patties because they were spoiled and outdated. The afternoon serving staff then asked Plaintiff what he thought about the chicken patties. Plaintiff complained about the patties, telling staff what he had observed and showing them the patties in question. The next day, January 9, 2009, Plaintiff was laid in from his work assignment pending further investigation of allegations by Defendants Almy and Hardy that Plaintiff had given

staff false information about the chicken patties. That same day, Plaintiff wrote to MCF Warden Harry, explaining the circumstances and seeking her assistance against Almy and Hardy.

On January 20, 2009, Plaintiff received a Prisoner Program and Work Assignment Evaluation with an average score of 39 that was signed by Defendants Almy and Hardy. On the basis of the evaluation, Plaintiff was granted his bonus pay. That same date, however, Plaintiff received a memorandum from Defendant Henry, which notified Plaintiff that he had been removed from his work assignment by Defendant Singleton. The removal from work was based on a supplemental Prisoner Program and Work Assignment Evaluation signed by Defendants Almy and Hardy on January 15, 2009, which stated that Plaintiff's behavior on January 8, 2009 had caused disruption to the Food Service Department and had jeopardized the security of the facility.

Plaintiff's letter to Warden Harry was assigned to her secretary, Kathy Jeffrey, who issued a notice to Defendant Henry to respond to Plaintiff's claims and provide a copy to the Warden and Dave Groenhof, the business manager of the facility, by January 12, 2009. On January 24, 2009, Plaintiff received a memorandum from Defendant Henry, indicating that Defendant Singleton had ordered him removed from his assignment because he gave staff false information about the chicken patties on January 8, 2009.

Plaintiff alleges that Defendants Almy, Hardy, Singleton and Henry deprived him of due process by falsely evaluating him, poorly investigating, and using false information to terminate him from his position without due process. He also alleges that Defendants retaliated against him for notifying Warden Harry about the use of tainted foods, in violation of his First Amendment rights. He further alleges that his removal from his food service job amounts to cruel and unusual punishment under the Eighth Amendment. He seeks injunctive relief and compensatory damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff asserts that Defendants Almy, Hardy, Singleton and Henry created, investigated, and relied upon false information, and that they terminated him from his job without a hearing, in violation of the Due Process Clause. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal

law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Further, because Plaintiff has no liberty interest in his prison employment, he cannot show that the false information was relied upon to a constitutionally significant degree. *See, e.g., Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Furthermore, the Defendants' failure to comply with their own administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Smith v. Freeland*, 954 F.2d 343, 347-48 (6th Cir. 1992) (state's failure to comply with its own law, rule, or regulations by itself state a claim under § 1983). For all these reasons, Plaintiff fails to state a due process claim arising from the termination of his prison employment or from the allegedly false information upon which that termination rested.

### B. Eighth Amendment

Plaintiff claims that Defendants violated the Eighth Amendment when they deprived him of his prison job in retaliation for exercising his right to express concern about potentially unhealthy food. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey*, 832 F.2d at 954 (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See Ivey*, 832 F.2d at 955 (rejecting an Eighth Amendment claim based on the loss of a prison job). "[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981) (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, much less

punishments that inflict unnecessary and wanton pain).  As a consequence, Plaintiff fails to state an Eighth Amendment claim.

### C. Retaliation

The Court will order service of Plaintiff's remaining retaliation claim.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's due process and Eighth Amendment claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the remaining retaliation claim against all Defendants.

An Order consistent with this Opinion will be entered.

Dated:   July 13, 2010                             /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   Chief United States District Judge