UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT TREADWELL, # 124392,   )
                              )
              Plaintiff,      )   Case No. 1:10-cv-560
                              )
v.                            )   Honorable Paul L. Maloney
                              )
RON ALMY, et al.,             )   **REPORT AND RECOMMENDATION**
                              )
              Defendants.     )
_____)

        This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises from his loss of a prison assignment to the food service department at the Muskegon Correctional Facility (MCF) in January 2009. The defendants are the prison's Assistant Food Service Director Ron Almy, Food Service Supervisor Chad Hardy, Food Service Director Anthony Henry, and Deputy Warden Michael Singleton. Plaintiff alleges that defendants violated his First Amendment rights by removing him from his prison assignment in retaliation for verbal statements he made regarding the quality of chicken patties served on January 8, 2009, and a letter he wrote to the warden on January 9, 2009, asking that he be reinstated to his assignment as an "OD cook" and awarded back pay.[1] Plaintiff sues defendants in their individual capacities and seeks an award of damages and injunctive relief.

        The matter is before the court on defendants' motion for summary judgment. (docket # 62). Plaintiff has filed his response. (docket # 64). I recommend that plaintiff's claims for

_____

[1]All other claims were dismissed on July 13, 2010. (docket #s 4, 5).

injunctive relief be dismissed as moot. I further recommend that defendants' motion for summary judgment be granted, because defendants are entitled to qualified immunity on all plaintiff's claims for damages.

### **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 427 (6th Cir. 2013). The motion for summary judgment forces the nonmoving party to

present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

**Proposed Findings of Fact**

The following facts are established by the evidence of record[2] beyond genuine issue. Plaintiff is serving a non-parolable life sentence in the custody of the Michigan Department of Corrections (MDOC) on his first-degree murder conviction. (docket # 20-1, ID#s 85-86). He is currently an inmate at the Alger Correctional Facility (LMF). (docket # 71). In January 2009, plaintiff was an inmate at the Muskegon Correctional Facility (MCF). Assistant Food Service Director Ron Almy, Food Service Supervisor Chad Hardy, Food Service Director Anthony Henry, and Deputy Warden Michael Singleton were MDOC employees at MCF. Defendant Singleton has since retired. (Def. Brief at 1, docket # 63, ID# 315).

On January 8, 2009, plaintiff worked as "OD cook." (Compl. ¶ 4, ID# 4). He states that he observed that some chicken patties from a particular box were being discarded, while others

---

[2]Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

from the same box were being cooked and served. (Compl. ¶¶ 9, 12, 13, ID# 4; Plf. Aff. ¶ 4, docket # 45, ID# 261). According to plaintiff, the box lacked a "manufacture expiration date label." (Compl. ¶ 12, ID# 4; Plf. Aff. ¶ 4, docket # 45, ID# 261). Plaintiff states that he thought it was "very suspicious because the chicken patties were being sorted and picked through from boxes not labeled with an expiration date" and prisoners were "discarding some of the chicken patties, and some were placed in the cooking utensil to be cooked for serving." (Plf. Aff. ¶ 4, docket # 45, ID# 261).

Defendants' affidavits disclose that the reason for discarding some patties was not related to their wholesomeness: Food Service rejected certain chicken patties because they appeared to have marks on them from the production/packaging equipment. Plaintiff, however, incorrectly assumed they were being discarded based on the quality of the product. (Singleton Aff. ¶ 4, docket # 42, ID#s 235-36; Hardy Aff. ¶ 7, docket # 20-3, ID# 91). The food in question was visually inspected and underwent taste tests by the MCF Food Service Department on January 8, 2009, prior to being served. The food was wholesome, healthy, and appropriately served to prisoners and staff members on January 8, 2009. None of the prisoners or members of the prison's staff became ill after eating the chicken. (Hardy Aff. ¶¶ 6-8, docket # 20-3, ID# 91; Henry Aff. ¶ 7, docket # 20-6, ID# 105; Almy Aff. ¶¶ 5-6, docket # 20-4, ID#s 95-96).

Plaintiff admits that he was "told by Supervisor Noble that there was nothing wrong with the chicken patties being cooked and served." (Compl. ¶ 14, ID# 4). Later, plaintiff made some verbal comments to someone on the "P.M. Staff" about the chicken patties, but he is vague about exactly what he said and the individual or individuals to whom his comments were directed. (Plf. Aff. ¶ 5, docket # 45, ID# 262). He states that in response to a question by "P.M. Staff" about what he thought about the chicken patties, he responded with an expression of "his concerns and told staff

what he had observed and showed staff the chicken patties in question." (Compl. ¶ 15, ID# 4). Plaintiff "stated what [he] thought was truthful" about the food. (Plf. Aff' ¶ 6, docket # 45, ID# 262; Compl. ¶¶ 29, 30, ID# 6). Plaintiff believed that his "work assignment required him to bring to the attention of staff any questions concerning substandard food." (Plf. Aff. ¶ 12, ID# 263; docket # 45-2, ID# 267).

As a result of plaintiff's comments, prisoners began telling each other to "get the substitute meal because the chicken patties were moldy." (Fondren Aff. ¶¶ 3-4, docket # 25-1, ID# 162; Minnifield Aff. ¶¶ 2-3, docket # 25-1, ID# 163). Plaintiff was "laid in" (suspended) from his assignment as "OD cook" pending further investigation. (docket # 20-5, ID# 102; Plf. Aff. ¶¶ 5, 6, docket # 45, ID# 262; docket # 45-1, ID# 265). The investigation sought to determine whether plaintiff's comments caused disruption and could have jeopardized the security of the institution. Plaintiff was informed of the decision to lay him in on January 9, 2009. (Singleton Aff. ¶ 5, docket # 42, ID# 236; 2nd Singleton Aff. ¶ 4, docket # 63-1, ID#s 333-34).

On January 9, 2009, plaintiff sent a letter or kite to the prison's warden complaining of his lay-in status and requesting that he be returned to his assignment and given back pay:

> Dear Warden Harry,
>
> I am writing to you because I believe that the immediate situation requires your attention. On 1-9-09, I was laid in by Asst. F/S Dir. Almy, pending an investigation because I allegedly told a <u>staff person false information concerning chicken patties and that my alleged behavior caused disruption and could have jeopardized the security of the institution</u>. (See attached Prisoner Program and Work Assignment Evaluation).
>
> It is my understanding that if I have a problem then I am suppose to address this problem or concern with staff, so there was nothing inappropriate about my actions. Furthermore, Asst. F/S Dir. Almy, alleged that I gave false information concerning chicken patties to staff. The information given to staff was not false, the chicken patties in question came from a box that was not labeled and numerous pieces in this box were deemed to be contaminated or unfit to be eaten and were sorted out and thrown into the trash can. While the rest of the chicken

patties in this same box were fried and sent out to the O.D. line to be served. When asked by staff, I told them what I thought and what I had observed and showed them the chicken patties in question.

In Food Service we are taught, "When in doubt, Throw it out." Asst. F/S Dir. Almy also alleged my behavior caused a disruption and could have jeopardized the security of the institution. No where in policy does it state speaking with staff (NOT PRISONERS) regarding a possible food contamination concern causes a security risk.

I am requesting that I be returned to my assignment and given back pay for all the days I missed because I have done nothing wrong or violated any institutional rules, policies or procedures.

Here is once again thanking you for your time and consideration in this matter.

(docket # 20-9, ID# 130; docket # 25-3, ID# 166). Plaintiff's letter made no mention of any earlier problems with chicken patties at the prison.[3] (docket # 20-9, ID# 130).

On January 15, 2009, the Food Service Department completed the investigation. Reports from Food Services and custody staff indicated that plaintiff had been advising staff and food service prisoners that the chicken patties being served for the evening meal on January 8, 2009 were spoiled or contaminated. Plaintiff continued to allege this even after Food Services Supervisors had advised him that there was nothing wrong with the chicken. It was determined that plaintiff's comments, particularly those made after it had been determined that there was nothing wrong with the chicken patties, had caused disruption of the Food Services Department and jeopardized the security of the institution. As a result, plaintiff received a below average score of 26 on his Work Assignment Evaluation of January 15, 2009. (docket # 20-2, ID# 93; docket # 25-4, ID# 168;

---

[3]Plaintiff states in an affidavit that his "concern was centered around the facts that approximately one month previous to the January 08, 2009 incident, Warden Harry had ordered the same type of food item 'chicken patties' removed from the chow hall serving lines and replaced with a substitute because no expiration date was visible on the boxes containing that food item." (Plf. Aff. ¶ 5, docket # 26, ID# 174).

Singleton Aff. ¶ 8, docket # 42, ID# 236; 2nd Singleton Aff. ¶ 4, docket # 63-1, ID# 334). On January 15, 2009, Deputy Warden Singleton terminated plaintiff's assignment as "OD cook." Singleton also removed a food service officer based on the investigation's findings. (Singleton Aff. ¶ 8, docket # 42, ID# 236; 2nd Singleton Aff. ¶ 4, docket # 63-1, ID#s 333-34; Hardy Aff. ¶ 9, docket # 20-3, ID#s 90-91). Singleton removed plaintiff because he had engaged in behavior which potentially jeopardized institutional safety and security. He would have taken the same action of terminating plaintiff's assignment regardless of any kite or other correspondence plaintiff sent to the prison's warden. (2nd Singleton Aff. ¶ 4, docket # 63-1, ID#s 333-34).

On June 11, 2010, plaintiff filed this lawsuit.

## Discussion

### I. Mootness

Plaintiff is an inmate at LMF. Defendants Almy, Hardy, and Henry are employed by the State of Michigan at MCF. Defendant Singleton has retired. Plaintiff's claims for injunctive relief against the defendants are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### II. Qualified Immunity

#### A. Standard

Defendants argue that they are entitled to summary judgment on plaintiff's claims for damages on the basis of qualified immunity. The first prong of qualified immunity analysis is whether the plaintiff has alleged and supported with evidence facts showing that the defendants' conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The second prong is whether the right was "clearly established" at the time of the defendants' alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). This case is readily resolved on the basis of the second prong of the qualified immunity standard, as the protected nature of plaintiff's speech is not clearly established.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when []he makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances []he confronted.... Because the focus is on whether the officer had fair notice that h[is] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 198-99); *see Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635,

640 (1987). "Thus, '[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[4] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). If judges are in disagreement on an issue at the time the defendants acted, it is "unfair" to later subject the defendants to monetary damages "for picking the losing side in the controversy." *Pearson*, 555 U.S. at 245. "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

      B.    <u>Plaintiff's Retaliation Claim</u>

A plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that

---

[4] "Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff's First Amendment claim falters on the first prong of the *Thaddeus-X* standard: the existence of conduct protected by the First Amendment. A prisoner retains only those First Amendment rights that are compatible with his status as a prisoner. *Pell v. Procunier*, 417 U.S. 817, 823 (1974). Consequently, not every expression by a prisoner is entitled to protection. In this case, plaintiff's expressive conduct in January of 2009 analytically falls into two categories: (1) statements made to fellow prisoners concerning the quality of food; and (2) plaintiff's informal complaints as a prison employee to his supervisors and the warden concerning the quality of prison food. The protected status of such speech has never been recognized by either the Sixth Circuit or the Supreme Court.

(1) Statements To Fellow Prisoners

Even after being told that the chicken patties were not spoiled, plaintiff made statements to fellow prisoner food service workers expressing his criticisms. This led to the predictable consequence that prisoners rejected the allegedly spoiled food and opted for a different choice, causing the prison to waste food.

The seminal Sixth Circuit case in the retaliation area, *Thaddeus-X v. Blatter*, 175 F.3d at 392, involved a prisoner's First Amendment right to access the courts. Other Sixth Circuit cases have extended the concept of protected speech to formal grievances to the prison administration concerning prison conditions, as long as they are not frivolous. *See, e.g., Herron v. Harrison*, 203

F.3d 410, 415 (6th Cir. 2000). But the Supreme Court has never held that communications between prisoners give rise to protected speech. In fact, the Court has singled out prisoner-to-prisoner communication as implicating core penological concerns of prison officials. *See Turner v. Safley*, 482 U.S. 78, 91-93 (1987). The consequences of false or incendiary reports in the prison context are all too obvious. In the present case, food was wasted, causing an adverse effect on the prison budget. In the next case, prisoners could take aggressive action or even riot in response to a report that they are being served tainted food. Neither the Sixth Circuit nor the Supreme Court has ever instructed that such speech, even if subjectively believed by the prisoner to be true, is protected in the volatile prison context.

>  (2) Complaints to Supervisors and Warden
>
>> a. Informal nature of complaints

Plaintiff also relies on oral statements[5] to his food service supervisors and his informal kite to Warden Harry. The protected nature of such informal complaints is far from clearly established. It is clearly established that formal prison grievances can be protected speech. *See Herron*, 203 F.3d at 415. Beyond that, the lower federal courts are split on the level of protection to be given to less formal complaints in the prison context. The Sixth Circuit has suggested that a simple oral complaint by a prisoner about a guard may not be protected. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). Chief Judge Maloney has recently noted the divergent opinions

---

[5] The content of the oral statements that plaintiff claims were entitled to First Amendment protection cannot be determined with precision because he is vague regarding what he said and to whom he said it. Vague generalizations do not suffice. *See Keeling v. Coffee County, Tenn.*, No. 12-6250, 2013 WL 4034415, at * 6 (6th Cir. Aug. 8, 2013) (citing *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1123-24 (7th Cir. 2009)).

of the lower courts as to whether informal kites to the warden are protected. *See Hull v. Baker*, No. 1:11-cv-623, 2013 WL 1818612, at * 2 (W.D. Mich. Apr. 29, 2013) (holding informal kite unprotected). Other courts agree, as they are hesitant to "elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment." *Carl v. Griffin*, No. 08 Civ. 4981, 2011 WL 723553, at * 5 (S.D.N.Y. Mar. 2, 2011) (quoting *Oriakhi v. Wood*, No. 05-cv-53, 2006 WL 859543, at * 5 (M.D. Pa. Mar. 31, 2006). Other judges, including Judge Quist of this court, disagree, and hold oral complaints can be protected. *See Davis v. Straub*, No. 1:07-cv-156, 2009 WL 4908433 (W.D. Mich. Dec. 11, 2009).

Regardless of one's views on the merits of the issue, the fact remains that reasonable jurists can and do differ concerning the protected nature of informal complaints in the prison context. It is a long leap from the type of protected conduct recognized in the landmark retaliation case in this circuit, *see Thaddeus-X*, 175 F.3d at 391 (right of access to courts for habeas and civil rights claims) to informal complaints about the quality of food. A reasonable, well-trained prison administrative official would not be on notice of plaintiff's clearly established First Amendment rights to air informal, uneducated speculations regarding food quality.

b. Complaints of prisoner/employees

But this case suffers from another layer of uncertainty and doubt. Even if the court assumes protected status for informal complaints, it is unclear whether a prisoner's complaints made as employee are protected by the First Amendment.

The unsettled nature of the law in this area is demonstrated by the lack of any clear legal framework for evaluating prisoner claims alleging retaliation on the basis of their speech as employees. Neither the Supreme Court nor the Sixth Circuit has "clearly established" the protected

status of speech by prisoners who speak as employees. The First Amendment rights of public employees are governed by a balancing test enunciated by the Supreme Court in a series of cases. *See, e.g., Connick v. Myers*, 461 U.S. 138 (1983). The Court requires that a public employee claiming retaliation for his speech demonstrate that the speech involved a matter of public concern. If so, the First Amendment rights of the employee must be balanced against the legitimate interests of the public employer. *See Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011). Protection extends, however, only to those statements made as a citizen, not as an employee. *See Garcetti v. Cebellos*, 547 U.S. 410, 421 (2006).

In *Thaddeus-X*, the *en banc* court observed that the First Amendment rights of prisoners are "not more extensive than those of a government employee; in fact, under most clauses of the First Amendment, they are much more strictly limited." 175 F.3d at 392. The court held that it was not necessary to decide whether the *Connick* public concern/balancing test applies to prisoner free speech claims in general: "Because it is not at issue in this case, we make no determination about the appropriateness of explicitly applying the public concern limitation to speech by prisoners, whose free speech rights are uncontrovertedly limited by virtue of their incarceration." 175 F.3d at 392. The court specifically noted that the right involved in that case -- access to the courts -- never has been subject to the public concern test:

> We hold only that there is no authority for subjecting a prisoner's constitutional right to access the courts, an aspect of the First Amendment right to petition the government for redress of grievances, to the public concern limitation described in *Connick v. Myers*. Nor would such a holding make sense as a policy matter. The right to access the courts is already limited to particularized causes of action -- direct appeal, collateral attack, and § 1983 civil rights actions. These actions are always on a matter of personal concern to the prisoner, who can only achieve standing if he alleges a personal injury fairly traceable to a redressable wrong committed against him. A "public concern" limitation would eliminate all prisoner suits protected by the right to access the courts; clearly, a judicial gloss on the First Amendment Free

> Speech Clause derived from the public employment setting is not an appropriate vehicle for annulling elaborate bodies of statutory law such as the habeas corpus statutes.

*Thaddeus-X*, 175 F.3d at 392 (footnotes omitted).

Since *Thaddeus-X* was decided, the Sixth Circuit has noted that the question whether the public concern test of *Connick* determines the protection to be given a prisoner's speech "is an open question in the Sixth Circuit." *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). The present case poses that unresolved question squarely. Plaintiff is not relying on a right to access the courts, nor is he asserting that he was retaliated against for speaking out as a prisoner concerning prison conditions. Rather, he claims protected status for his statements as a prisoner/employee.

The Seventh Circuit is the only federal appellate court to have directly addressed this issue. The Seventh Circuit had previously imposed a public-concern requirement on prisoner retaliation cases. *See, e.g., McElroy v. Lopac*, 403 F.3d 855, 858-59 (7th Cir. 2005) (prisoner alleging that lay-in status was retaliation for speech must meet the public-concern test). This had the effect of denying protected status to "job-related complaints." *Whitfield v. Snyder*, 263 F. App'x 518, 521-22 (7th Cir. 2008). In *Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010), the Seventh Circuit observed that "prison officials are not as constrained as other government employers" and "[i]n the prison setting, the prisoner's job is only one part of a much broader, comprehensive penological program in which prison officials control all aspects of the prisoner's life." *Id.* at 796. The Seventh Circuit declared the public concern test "unworkable in the prison employment context," precisely because it failed to recognize the discretion that prison officials have in controlling the prison population. *Id.* The court created a new test based on *Turner v. Safley*, 482 U.S. 78 (1987), which is more respectful of prison officials' discretion and makes it harder for a prisoner/employee to

recover. 599 F.3d at 796-97. Beyond *Watkins*, there is little guidance on the extent of First Amendment protection to be accorded to the complaints of prisoner/employees.

Given the unsettled state of the law, defendants are clearly entitled to qualified immunity. As a public employer, a Michigan prison administrator would be within her rights to fire a non-prisoner employee who spread alarming rumors about the quality of food. Under *Garcetti*, the federal courts would not find the firing actionable, as it was based on the employee's speech as employee, not as citizen. Neither the Sixth Circuit nor the Supreme Court has afforded prisoner/employees greater rights to speak out than free employees. Plaintiff cannot point to any clearly established holding of those courts recognizing protected status in the unique circumstances of this case.

It is possible that the Sixth Circuit may impose a "public concern" requirement on all prisoner grievances not involving access to the courts. Or, the court may decide to treat prisoner and non-prisoner employees alike by applying *Connick* to cases such as the present one, where the prisoner is clearly speaking as employee. Or, the court may follow the lead of the Seventh Circuit by applying the *Turner* test, which will generally give less protection to prisoner/employee speech. Or, the court may answer the unresolved issue in *Thaddeus-X* in a completely different way. The point for purposes of qualified immunity is that the protected nature of plaintiff's speech is not clearly established and that reasonable officers would not be on notice that they are abridging constitutional rights of a prisoner when they fire him for conduct that would justify the firing of a free prison employee.

**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive relief be dismissed as moot. I further recommend that defendants' motion for summary judgment (docket # 62) be granted and that judgment be entered in defendants' favor on all plaintiff's claims for damages on the ground of qualified immunity.

.

Dated: October 2, 2013        /s/ Joseph G. Scoville
                              United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).